**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

THE UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                      Case No. 11-cr-20052
                                                                                      Honorable Denise Page Hood

MEHRAN JAVIDAN and
VISHNU PRADEEP MEDA,

        Defendants.

_____/

**OPINION AND ORDER GRANTING MOTION TO EXCLUDE 404(B) EVIDENCE,
DENYING MOTION TO EXCLUDE EXPERT, DENYING IN PART AND GRANTING
IN PART MOTION REGARDING DEFENSE WITNESS SARAH KHAN, AND
DENYING MOTION REGARDING ADMISSIBILITY OF CONVERSATIONS ABOUT
PAYMENT OF MARKETERS AT ACURE**

**I.    INTRODUCTION**

Now before the Court are the following matters: Defendant Vishnu Meda's Motion to Exclude Rule 404(b) Evidence; the Government's Motion to Exclude Expert; Defendant Mehran Javidan's Motion Regarding Testimony of Defense Witness Sarah Khan; and Defendant Javidan's Motion Regarding Conversations About Payment of Marketers at Acure. The matters were fully briefed and argued on the record and are now appropriate for determination.

**II.    ANALYSIS**

    **A.    Motion to Exclude 404(b) Evidence [Dkt #69]**

Meda explains that the Government intends to submit witness testimony showing that Meda created false patient therapy notes for patients that he did not see while working at Devine Physical Therapy and Rehabilitation Corporation after he stopped working at Acure. The Government's October 25, 2012 Supplemental Discovery Notice did not disclose the Government's intent to admit

such evidence. On February 8, 2013, the Government provided additional discovery, which included two interview reports from Vanessa Dowell and two interview reports from Carol Grant.

Meda requests that the evidence be excluded because it is more prejudicial than probative. Meda offers that the evidence is prejudicial and cumulative. The Government claims that it would offer the evidence under Rule 608(b) as to truthfulness depending on Meda's testimony. Meda did not testify at trial and therefore this argument is moot.

Although evidence of other bad acts cannot be used to prove character in conformity, such evidence may be used to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The trial court has broad discretion in determining whether similar act evidence is admissible. *United States v. Stout*, 509 F.3d 796 (6th Cir. 2007). Before admitting such evidence, the trial court must first determine whether there is sufficient evidence to allow the jury to make a reasonable finding, by a preponderance of the evidence, "that the act occurred and that the defendant was the actor." *Huddleston v. United States,* 485 U.S. 681, 690 (1988); *United States v. Gessa*, 971 F.2d 1257, 1261–62 (6th Cir. 1992). The Court must then assess whether the similar acts evidence is probative of a material issue other than character. *Huddleston*, 485 U.S. at 686. The next inquiry is whether the evidence is relevant to a matter "in issue." *United States v. Feinman*, 930 F.2d 495, 499 (6th Cir. 1991). The evidence "must deal with conduct substantially similar and reasonably near in time to the offenses" for which the defendant is charged. *Id.* The Court may nonetheless exclude the evidence if its probative value substantially outweighs the danger of unfair prejudice, confusion, or misleading the jury. Fed. R. Evid. 403.

The Court finds that the testimony is cumulative and more prejudicial than probative. The

Government has offered evidence as to Meda's activities at Patient Choice and All American. Any evidence regarding Meda's time at Devine would be cumulative. There is substantial danger that the jury may convict Meda based on his activities at Patient Choice, All American, and Devine and not for what was done at Acure.

## B.     Motion to Exclude Expert [Dkt #71]

The Government requests the exclusion of Javidan's proposed expert testimony from Gerald R. Humes. The Court will allow the expert testimony of Humes.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Although the task of evaluating expert testimony is generally left to the jury, Rule 702 assigns the trial court the role of gatekeeper in order to "ensur[]e that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). The Supreme Court identified four factors that normally would bear on the trial court's inquiry into the reliability of an expert's testimony: 1) whether the theory or technique can or has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error in using a particular scientific technique; and 4) whether the theory or technique has been generally accepted within the relevant scientific community. *Id.* at 593–94. These factors are not definitive nor exhaustive and may not be relevant in any given case. *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

3

The Government posits that Javidan has not shown that Humes is qualified to opine about salaries in the health care field. In response, Javidan explains that Humes will not present testimony regarding whether Javidan was "underpaid." Rather, she intends to offer Humes testimony to show that Javidan was modestly paid and infused the business with her own money in order to make payroll.

However Javidan attempts to word it, it appears that part of Humes' testimony will go towards whether she was underpaid. In his opinion summary, Humes opines that "it appears that [Javidan] was underpaid based on the above-mentioned comparable salary information for individuals in similar positions." [Docket No. 71, Pg ID 372] Although Humes has extensive experience in various areas of forensic accounting, he, as an accountant, has no expertise or training that qualifies him to opine on the salary of a health care worker at Javidan's level of expertise, position, or education. Any such opinion is beyond Humes' experience as a forensic and tax accountant.

The Court will, however, allow Humes to opine on matters within the expertise of a forensic accountant, such as financial matters at Acure. The Government argues that the testimony is not based on scientific, technical, or other specialized knowledge. It contends that the expert's opinion is based on simple financial documents, Javidan's recollections, and information retrieved from two websites. The Court finds that it is beyond explanation that the field of tax or accounting is sufficiently complex to be considered beyond the knowledge of the average person and would, therefore, aid the jury in understanding Acure's expenditures and revenue.

Finally, the Government argues that the testimony is unreliable because the expert ignored underlying information or relied on summaries from Acure. Further, the Government claims that

4

Javidan has not provided any information explaining the expert's process or technique for reaching his opinion.

The Government has had an opportunity to depose Humes. During his deposition, Humes disclosed the documents on which he relied and his processes. Humes has obviously relied on his knowledge and skills as a forensic accountant to formulate his opinions. Whether Humes ignored certain information or did not include certain facts goes to the weight, and perhaps the credibility, of Humes' testimony. It does not weigh against admissibility.

In her response, Javidan asks that the Court exclude the following information disclosed by the expert: (1) credit card debt incurred by Javidan and her husband before and during time set forth in indictment; (2) the settlement of the debt; and (3) Javidan and her husband filing an income tax return reporting the difference between what was owed and what was settled as income and then later filing an amended income tax return reporting the difference as a line item. Javidan argues that any such evidence irrelevant, collateral, highly prejudicial, and cumulative in light of the substantial evidence that has been admitted regarding Javidan's poor money management skills.

To the extent that Humes relied on and evaluated Javidan and her husband's tax returns, Javidan has put her financial position in issue. The Government may examine Humes' and Javidan's husband on this issue. While Javidan claims that this is a collateral issue, she has, however, opened the door to further inquiry. Although the Court is aware that such information should be admitted with extreme caution, the evidence is probative of motive and whether Javidan experienced any financial gain. The Court finds that this evidence is not cumulative and its probative value outweighs the prejudicial effect. The Court will allow the expert testimony and examination of Javidan's financial position.

### C. Testimony of Sarah Khan [Dkt #73]

Near the beginning of trial, the Government indicated that some of the witnesses Javidan intended to call may need to have counsel appointed in order to protect their Fifth Amendment right against self-incrimination. The Court ordered appointment of counsel for the potential witnesses. Sarah Khan was among the potential witnesses who the Court appointed counsel.

Javidan asserts that Khan is an important witness to her defense. She notes that Counsel for Khan indicates that (1) Khan is prepared to testify on behalf of Javidan and will provide exculpatory testimony, (2) Counsel does not believe Khan committed any criminal offenses; (3) Government counsel has advised Khan's Counsel that she could be charged with a criminal offense; and (4) Khan will invoke her Fifth Amendment right because she is not constitutionally compelled to provide a link in the chain for possible prosecution in the future. Khan would be willing to testify under a compulsion order.

The Government provides that in January 2013, former Acure office manager Mariah Ahmed stated during an interview with the Government that Khan was one of two data entry employees that made up physical therapy visit notes. According to the Government, this was confirmed by Mohammed Shahab and Sherry Prescott. The Government also learned that Khan was connected to another Shahab related health care agency—Bliss Home Care or Helping Hands—which is still in operation. Counsel for Javidan informed the Government that Khan would be a potential witness in February 2013.

After the Court appointed counsel for Khan, the Government informed Khan's Counsel of the statements made against her in interviews with various witnesses and offered to send the reports. Khan's attorney was asked if Khan was willing to be interviewed. After consulting Khan, Khan's

6

Counsel told the Government that Khan intended to invoke her Fifth Amendment privilege and would only interview in exchange for immunity. The Government then asked if Khan would be willing to be interviewed under a Kastigar agreement. After consulting Khan, Khan's Counsel informed the Government that Khan still intended to invoke her Fifth Amendment privilege and would not interview under a Kastigar agreement. Khan's Counsel further advised the Government that the only non-privileged information was general biographical information.

Javidan requested that the Court conduct a hearing outside the presence of the jury to determine whether Sarah Khan may properly invoke her Fifth Amendment rights. The Government agreed that the Court should hold a hearing on Khan's Fifth Amendment privilege. However, the Government asserted that Khan should not be questioned regarding the nature of her assertion of the right because it would violate the right. Rather, the Government suggested:

> the government can proffer the information that gives rise to Ms Khan's reasonable fear of prosecution. Ms. Khan's counsel can state on the record that he has advised her regarding her rights. Ms. Khan can assert her right under the Fifth Amendment. Any further inquiry to Ms. Khan would violate her right to remain silent.

[Docket No. 79, Pg ID 507].

A hearing was held outside the presence of the jury. Khan was sworn and stated her name on the record. Her counsel then indicated that his client intended to invoke her Fifth Amendment right to remain silent. The Government proffered information it considered to be inculpatory. Javidan's counsel then stated what she believed the evidence would show. Khan then invoked her Fifth Amendment right to remain silent.

Javidan asks that the Court issue an order extending judicial immunity to Khan. However, "[n]o court has authority to immunize a witness." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 261 (1983). 18 U.S.C. § 6003 gives the "United States attorney . . . , with the approval of the Attorney

7

General, the Associate Attorney General or any designated Assistant Attorney General or Deputy Assistant Attorney General, . . . [the authority to] request an order" granting immunity to a witness upon certain conditions. The decision to grant immunity to a witness lies solely in the authority of the executive branch. *United States v. Mohney*, 949 F.2d 1397, 1401 (6th Cir. 1991) ("federal courts do not have the inherent power to immunize witnesses whose testimony is essential to an effective defense."); *United States v. Pennell*, 737 F.2d 521, 526 (6th Cir. 1984). The Court does not have authority to grant Khan "judicial" immunity.

Javidan, in the alternative, requests that the Court issue an order compelling the Government to provide immunity to Khan. The Sixth Circuit has consistently held that the district court does not have authority to force the government to grant a witness immunity. *United States v. Talley*, 164 F.3d 989, 997 (6th Cir. 1999); *United States v. Medina*, 992 F.2d 573, 585–86 (6th Cir. 1993); *Mohney*, 949 F.2d 1397, 1401 (6th Cir. 1991); *Pennell*, 737 F.2d at 526–27. The Sixth Circuit has discussed, but not accepted, two limited scenarios where a grant of immunity may be appropriate. *Talley*, 164 F.3d at 997.

The first theory–the "effective defense" theory–has been explicitly rejected by this Circuit. *Id.* "Under the effective defense theory, immunity is available when it is properly sought in the district court, the witness is available to testify, the proffered testimony is both essential and clearly exculpatory, and no strong governmental interests countervail against an immunity grant." *Mohney*, 949 F.2d at 1401 (citing *Virgin Islands v. Smith*, 615 F.2d 964, 972 (3d Cir. 1980)). The Sixth Circuit has noted that adoption of such a theory would raise separation of powers concerns. *Talley*, 164 F.3d at 997. A limited exception may exist where "the government's selective grant of immunity to its own witnesses, while denying immunity to the defendant's witnesses, may deprive

the defense of a fair trial." *Id.* The defense must make a showing that the evidence was "egregiously lopsided" due to the Government's selective grant of immunity. *Id.* However, the defendant does not have a right to a grant of immunity to his witnesses merely because the prosecution relies on immunized witnesses. *Mohney*, 949 F.2d at 1402.

Javidan notes that Khan will provide exculpatory testimony. During trial, Javidan has argued repeatedly that Khan is essential to her defense. However, she has not provided how the evidence is now lopsided due to a grant of immunity to one witness and not to Khan. In any event, the Sixth Circuit has rejected this theory and Javidan cannot rely on it.

The second theory, based on prosecutorial misconduct, has been discussed but not adopted in this Circuit. *Talley*, 164 F.3d at 998; *United States v. Pennell*, 737 F.2d 521, 526 (6th Cir. 1984). "Under this theory, due process requires an immunity grant where the prosecution abuses its discretion by intentionally attempting to distort the fact-finding process." *Mohney*, 949 F.2d at 1402. The defendant must show that the prosecution is deliberately "attempting to distort the fact-finding process." *Id.*

Javidan asserts that the Government is attempting to drive Khan from the witness stand by proclaiming, upon discovery that she would be a defense witness, that Khan is the subject of an investigation. Javidan notes that Amanda Prescott was granted immunity and she and Khan were both data entry employees at Acure. However, the Government has not prevented Khan from testifying. According to the Government, information implicating Khan was discovered before Khan was listed as a defense witness. Khan is now asserting her Fifth Amendment privilege on advice of counsel and not because of Government action. According to the Government, it has only made contact to Khan through her attorney, which the Government requested upon learning that she

9

may be a defense witness. Javidan has not demonstrated sufficient facts to warrant a finding that Khan is entitled to immunity due to prosecutorial misconduct. It does not appear that the Government has intentionally attempted to distort the fact-finding process of this trial.

Javidan also suggests that the questioning of Khan could be limited to non-privileged matters. *See United States v. Taylor,* 154 F.3d 675, 684–85 (7th Cir. 1998) (finding that the trial court did not err in limiting questions when witness had both privileged and non-privileged information). Khan has indicated that the only matters considered non-privileged are general biographical information and that she intends to invoke her Fifth Amendment privilege. If she chooses to testify, the Court cannot limit the scope of cross examination to non-privileged matters; the Government is entitled to cross examine Khan, if she chooses to testify, on matters that she places in issue. *Brown v. United States*, 356 U.S. 148, 155–56 (1958) (A witness invoking the Fifth Amendment privilege "cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell."); *United States v. Zirpolo*, 704 F.2d 23, 25–26 (1st Cir. 1983). Given that Khan intends to invoke the Fifth Amendment privilege as to all relevant testimony, limiting the scope of questions would not be an appropriate solution.

**D.     Conversations Regarding Payment of Marketers at Acure**

Javidan seeks admission of testimony from Sasaan Khoubyari explaining that the meeting between Shahab and Khoubyari and some attorneys "did not involve any plan or discussion to create 'dummy' invoices, or to create fake, backdated contracts." [Docket No. 84, pg ID 540–41]. Javidan

10

asserts that the testimony will be offered as impeachment testimony and as a nonhearsay verbal act in order to show her state of mind, i.e. what was told to her.

The Court finds that Khoubyari's testimony is not admissible as a "verbal act." Federal Rule of Evidence 801(c) defines hearsay as an out of court statement made by a declarant and offered to prove the truth of the matter asserted. A "verbal act" or "legally operative fact" does not fall within the definition of hearsay. *Lorraine v. Markel Am Ins. Co.*, 241 F.R.D. 534, 565–66 (D. Md. 2007). A verbal act is not a "'statement' because [it] do[es] not constitute an 'assertion.'" *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008). A verbal act does not fall within the definition of hearsay because "[i]t is the fact that the declaration was made, and not the truth of the declaration, which is relevant." *Id.* In short, a verbal act is relevant because it was said. For example, "'A witness who testifies at trial that [someone solicited them to commit a crime] is testifying to a verbal act of which the witness has direct knowledge: the extension of the invitation." *Id.* (quoting *United States v. Gordon*, 1991 U.S. App. LEXIS 13720 (6th Cir. June 20, 1991)). Another example is contract negotiations defining terms or describing content. *Lorraine*, 241 F.R.D. at 565 (citing *Preferred Properties Inc. v. Indian River Estates Inc.*, 276 F.3d 790, 799 (6th Cir. 2002)) ("communications between the parties to a contract that define the terms of a contract, or prove its content, are not hearsay, as they are verbal acts or legally operative facts.").

The testimony Javidan seeks to admit is hearsay despite her argument that she intends to use it to show her state of mind. No legal significance attaches to the fact that the statements were made. It is the truth asserted in the statements and not the statements themselves that are relevant to this matter. Essentially, Javidan is attempting to admit the testimony for the truth of the matter asserted. This is impermissible under Rule 802.

11

The Court further finds the statement inadmissible as impeachment testimony. Javidan asserts that she seeks to impeach Shahab's credibility. A witness's credibility may be attacked by reputation, opinion, or specific acts. Fed. R. Evid. 609. However, Javidan may not offer extrinsic evidence of specific acts of bad conduct to attack Shahab's credibility. Fed. R. Evid. 608(b).

### III. CONCLUSION

Accordingly,

IT IS ORDERED that Meda's Motion *in Limine* to Exclude 404(b) Evidence Regarding Alleged Acts at Devine [Docket No. 69, filed February 12, 2013] is GRANTED.

IT IS FURTHER ORDERED that the Government's Motion *in Limine* to Exclude Expert Report [Docket No. 71, filed February 14, 2013] is DENIED.

IT IS FURTHER ORDERED that Javidan's Motion *in Limine* Regarding Defense Witness Sarah Khan [Docket No. 73, filed March 1, 2013] is DENIED IN PART and GRANTED IN PART. The Court has held a hearing to determine whether Khan can invoke the Fifth Amendment privilege. As to all other matters, the Motion is otherwise denied.

IT IS FURTHER ORDERED that Javidan's Motion *in Limine* regarding Admissibility of Testimony as to Conversations Regarding Decisions on the Manner in Which Acure Home Health Care Agency was Paying Marketers [Docket No. 84, filed March 19, 2013] is DENIED.

IT IS SO ORDERED.

                                s/Denise Page Hood
                                Denise Page Hood
                                United States District Judge

Dated: April 15, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 15, 2013, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager